**SO ORDERED.**

**SIGNED this 28 day of May, 2010.**



_____
**JANICE MILLER KARLIN**
**UNITED STATES BANKRUPTCY JUDGE**

_____

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| **DON LEE GARNER and** | ) | **Case No. 09-42094** |
| **NELDORA LOUISE GARNER** | ) | **Chapter 7** |
| | ) | |
| Debtors. | ) | |
| | ) | |

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on its Order to Show Cause,[1] which was issued March 24,

2010. The Court ordered US Bank to appear and show cause why it should not be found to have

violated the automatic stay and thus subject to monetary sanctions.[2]  Both parties have submitted

briefs on this matter, and the Court conducted a non-evidentiary hearing on May 12, 2010, at which

time it heard oral argument.

---

[1]Doc. 17.

[2]The Order to Show Cause was issued after US Bank failed to respond to the Motion for Show Cause Order. (Doc. 12).

At the conclusion of oral argument, during which US Bank argued that there were no genuine issues of material fact, and that whether it had violated the stay should be decided as a matter of law, the Court set the matter for evidentiary hearing on the Court's July 14-15 stacked docket. The Court did promise to review the pleadings on file, in light of the admissions made by Debtors' counsel regarding the facts at the hearing and in the documents he had filed on Debtors' behalf, to see if there were any material issues of fact remaining to be tried.

This is a core proceeding over which this Court has jurisdiction to enter a final order.[3] After reviewing the briefs and arguments made at the hearing, in light of the material facts, the Court finds that US Bank has not violated the automatic stay, and that no further proceedings on this issue are necessary. For that reason, the evidentiary hearing is canceled, and this order will terminate the Show Cause proceedings.

## I.     FINDINGS OF FACT

The Court makes the following findings of fact based upon the uncontroverted facts set forth in the briefs filed in this case and the admissions made by counsel at the May 12, 2010 hearing. Debtors filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code on December 16, 2009. On the petition date, Debtors owned a checking account with US Bank. Debtors also owned a $1,500 line of credit with US Bank, which provided overdraft protection to that checking account by automatically transferring funds from the line of credit to the checking account in the event honoring a presented check or other debit transaction would reduce the checking account balance to below zero.

---

[3]28 U.S.C. § 157(b)(1) and 28 U.S.C. § 1334.

Case 09-42094   Doc# 35   Filed 05/28/10   Page 2 of 10

On December 15, 2009, one day before the bankruptcy petition was filed, US Bank honored an electronic withdrawal[4] from Debtors' checking account, which Debtors had pre-authorized the bank to honor, in the amount of $222.78. This withdrawal would have caused an overdraft in Debtors' account had US Bank failed to honor the agreement it had with Debtors to advance funds from the line of credit to cover the shortage. Accordingly, US Bank advanced $283.93 from the line of credit to cover the shortage, leaving Debtors' checking account with a balance of $66.33. This transfer also exhausted the entire $1,500 line of credit that provided overdraft protection to the checking account. Debtors then maintained a positive balance through December 21, 2009.

Debtors continued using the US Bank checking account following the filing of their bankruptcy petition when they elected not to terminate some or all of the automatic electronic deposits they had authorized prior to filing bankruptcy.[5] For example, on December 21, 2009, US Bank honored the pre-authorized electronic withdrawals to "Prepaid Legal" and "Monitronics," totaling $50.89, which brought the checking account balance down to $15.44 at the close of business

---

[4]A common form of debit transaction is a pre-authorized draw where consumers arrange to pay recurring monthly obligations, such as those to insurance companies, mortgagees, car creditors, etc. In those cases, the transactions are initiated by the creditor (the insurance company, mortgagee or car creditor) by sending a written or electronic request for reimbursement to the debtor's bank. In a debit transfer, a creditor, pursuant to written authority from the debtor, is enabled to draw on the debtor's bank account by issuing an instruction to pay to the debtor's bank. If the debtor's bank pays, the bank will be reimbursed by the debtor rather than by the person giving the instruction. For example, the holder of an insurance policy may pay premiums by authorizing the insurance company to order the policyholder's bank to pay the insurance company. The order to pay may be in the form of a draft covered by Article 3, or it might be an instruction to pay that is not an instrument under that Article. The bank receives reimbursement by debiting the policyholder's account. 3 White & Summers, Uniform Commercial Code § 22-3 (5th ed. 2009).

[5]The Court notes that Debtors could have elected to stop any preauthorized withdrawals from the account by providing oral or written notice to US Bank at least three days prior to the date of the transfer. *See* 15 U.S.C. § 1693e(a) and 12 C.F.R. § 205.10(c)(1). So even if Debtors were denied the ability to close the account on November 23, 2009, as they allege, it was well within their power to stop using the account to avoid any potential overdraft charges. The Court also notes that the fact that Debtors had three electronic withdrawals, and incurred the attendant overdraft charges that went with them, immediately prior to December 23, has some tendency to corroborate the Bank's contention (which the Court has found is not legally relevant) that Debtors sought to stop the charges, and to close the account, on December 23, not over a month earlier when their account had a positive balance and there were no such overdraft charges being assessed.

3

that date.  The next day, on December 22, 2009, US Bank again honored a Visa Purchase Debtors

had apparently made to "Ab Rocket" on December 21, 2009 in the amount of $39.95.  Because this

electronic withdrawal exceeded the remaining positive balance in the bank account,  US Bank also

charged Debtors with overdraft charges totaling $38.00 on December 22.  That left a negative

balance of $36.51 as of the close of business on that date.

Another overdraft charge in the amount of $35.00 was charged the following day, resulting

in a negative account balance of $71.51 at the close of business on December 23.[6]  On December 24,

an electronic withdrawal to "Old American Ins" in the amount of $18.30 cleared Debtors' account.

That withdrawal was followed by another overdraft charge of $35.00 and a continuous overdraft fee

of $8.00, bringing the account balance to a negative $132.81 at the close of business on December

28.

On December 30, Debtors made an additional purchase with their Visa card from Ab Rocket

in the amount of $24.90, which again produced an overdraft charge of $35.00.  This left the account

with a negative balance of $192.71 as of January 4, 2010.  On January 5, 2010, two electronic

withdrawals to "Pennsylvania Lif"[7] were presented to the bank; this time US Bank elected not to

honor those electronic withdrawals.  They did charge Debtors with a returned check charge in the

amount of $37.50 for each withdrawal, leaving a negative account balance of $267.71 on January

6.

---

[6]The reference numbers provided on the bank statement indicate that this overdraft charge relates to the
December 21 purchase to Ab Rocket.

[7]Document 12-1, a copy of the U.S. Bank Internet Banking document showing all of these electronic activities,
was provided by Debtors in their initial Motion for Order to Show Cause, and Debtors have not disputed any of the
notations on that document.

4

There does not appear to have been any additional activity on the account except for a continuous overdraft fee of $8.00 per day that was charged up to and including February 5, 2010. On February 8, US Bank closed the account, charging a force-closed account fee of $30.00. The final balance on the account on February 8, 2010 was a negative $537.71. The entire balance had accrued from post-petition withdrawals and bank charges as a result of those post-petition withdrawals.

According to US Bank's records, Mrs. Garner came into the bank on December 23, 2009, seeking to close the account. However, because the checking account had a negative balance at that time, she was unable to close the account without making a deposit sufficient to bring the account balance to zero. Debtors dispute that date, contending that Mrs. Garner instead attempted to close the account on November 23, 2009 (pre-petition), but US Bank refused to close it because the account had a negative balance (although the account statements, which Debtors do not dispute, clearly show a positive account balance at that time).

On January 22, 2010, Debtors' attorney sent a letter to US Bank advising them of the bankruptcy filing and requesting that they cease all further collection efforts against the Debtors on this account. This letter appears to have been sent in response to the continuous overdraft fees that were still being assessed against the account. On January 25, US Bank sent a collection letter to Debtors indicating that their checking account had a negative balance of $395.71 and requesting they bring the account current.

Debtors' counsel responded to this letter on February 3, 2010 by sending a second (identical) letter to US Bank, again advising them of the bankruptcy filing and requesting they cease collection

5

efforts. On February 8, US Bank closed the account, with a negative balance of $537.71, and demanded payment of that amount by sending a letter mailed to Debtors on February 10.

As a result of the collection efforts by US Bank, Debtors filed their Motion for Show Cause Order on February 19, 2010, alleging that US Bank had violated the automatic stay imposed, specifically relying on 11 U.S.C. § 362(a)(6),[8] and specifically alleging the demand letters were for pre-petition debt. When US Bank failed to respond to the motion, the Court issued an Order to Show Cause on March 24, 2010, requiring US Bank to appear before the Court on April 13, 2010, to show cause why it should not be sanctioned for violating the automatic stay. US Bank appeared as ordered, and the Court ordered US Bank to file a written response.

In its response to the Order to Show Cause, US Bank argues that it did not violate the automatic stay in assessing the overdraft fees or attempting to collect the balance due on the account because all of the fees and charges were incurred post-petition. In addition, US Bank contends that Debtors' new assertion[9] that it may have violated the automatic stay when it transferred $283.93 from the reserve line of credit to Debtors' checking account on December 15, 2009, is without merit because this transfer occurred prior to the filing of the petition—and, thus, there was no stay in place at the time of that pre-authorized transfer.

Debtors' response brief raises several arguments to support their contention that US Bank violated the automatic stay. Debtors now claim that US Bank acted improperly by automatically advancing funds from the reserve line of credit to cover the potential pre-petition overdrafts. Debtors

---

[8] This bankruptcy was filed after October 17, 2005, when most provisions of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 became effective. All future statutory references are thus to the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, 11 U.S.C. §§ 101-1532 (2005), unless otherwise specifically noted.

[9] This allegation did not appear in Debtors' original Motion to Show Cause.

also claim that US Bank's demand letters included the pre-petition advances as part of the $537.71 demanded in the post-petition letters. Finally, Debtors claim that US Bank violated the automatic stay by not allowing them to close the account on November 23, 2009, which would have prevented the accumulation of the overdraft charges that were assessed post-petition.[10]

At the hearing on this matter, counsel for Debtors conceded many of US Bank's points and stipulated to all facts except regarding the date when Debtors attempted to close the account. The alleged stay violation has thus been narrowed to the single issue of whether US Bank violated the stay by allegedly not allowing the account to be closed on November 23, 2009, which resulted in the accumulation of the post-petition overdraft charges and miscellaneous fees that ended up totaling $537.71.

## II.     ANALYSIS

Debtors claim that US Bank violated § 362(a)(6), which prohibits any entity from "any act to collect, assess, or recover **a claim against the debtor that arose before the commencement of the case** under this title."[11]  Pursuant to § 362(k)(1), with certain exceptions not applicable here, "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages."[12]  A debtor alleging a violation of the automatic stay has the burden to

---

[10] Again, US Bank argues its records reflect no attempt by Debtors to close the account on November 23, 2009. Instead, US Bank's records expressly show that Debtors attempted to close the account on December 23, 2009, but were unable to do so because they did not have the funds to bring the account our of a negative balance. This is the only factual dispute.

[11] 11 U.S.C. § 362(a)(6) (emphasis added).

[12] 11 U.S.C. § 362(k)(1).

7

demonstrate, by a preponderance of the evidence, that the creditor knew of the automatic stay and intended the actions that constituted the violation.[13]  No specific intent is required.[14]

To succeed on a claim for damages for a violation of the automatic stay under § 362(a)(6), Debtors must show that (1) US Bank attempted to collect, assess, or recover a claim against them; and (2) that the claim arose before the commencement of their bankruptcy case.  There is no dispute by US Bank that it has attempted to collect the $537.71 that was owing on Debtors' checking account on the date they closed the account.  However, that is only one-half of the test.  In order to succeed on this claim, Debtors must also show that the claim it attempted to collect arose before the commencement of the case.

The documents that Debtors agree are accurate demonstrate that the debt US Bank sought to collect with the post-petition collection letters to Debtors arose after they filed their bankruptcy petition.  The entire claim arises out of overdraft fees and charges, returned check charges, and a closing fee that were all assessed after the petition in this case was filed.  Debtors counsel admitted at the hearing on this matter that none of the claim arises from any pre-petition debt owed by Debtors, and that there was a small positive balance in the account on the date of filing bankruptcy.  Therefore, it is clear that US Bank has not violated § 362(a)(6), as they allege.

Debtors continue to argue that "[h]ad Bank closed said account on November 23, 2009, as debtors requested and not continued the 'automatic advances' from the Reserve Line, the amounts and fees Bank attempts to collect by post-petition demand letters would not exist.  This clearly constitutes a violation of the automatic stay."  The Court disagrees.

---

[13]*In re Payne*, 387 B.R. 615, 638 (Bankr. D. Kan. 2008).

[14]*Id.*

Case 09-42094   Doc# 35   Filed 05/28/10   Page 8 of 10

First, the record clearly shows that the automatic advances from the reserve line of credit

constitute no part of the claim US Bank is attempting to collect. Second, neither § 362(a)(6), which

is the provision specifically relied upon by Debtors, nor any other provision of § 362(a), appears to

apply to the allegations made by Debtors.

Section 362(a) is very specific in its scope and the types of conduct it prohibits. It is not a

catch-all provision that can be used to right any alleged wrong that Debtors allege occurred. If

Debtors did attempt to close the account on November 23, 2009, and US Bank wrongfully refused

to allow them to do so, and those actions resulted in damages to Debtors, it is possible Debtors could

have some cause of action against US Bank under state or federal law.[15] However, it is very clear

that those actions do not constitute a violation of the automatic stay provided under § 362(a), because

at the time of the alleged improper actions, there was no stay in place, as the bankruptcy had not been

filed. The stay was not imposed until the filing of the bankruptcy petition.

## III.    CONCLUSION

Based upon the briefs filed in connection with this matter, and the arguments and admissions

made at the hearing on May 12, 2010, the Court finds that US Bank did not violate the automatic

stay in attempting to collect the $537.71 negative balance in Debtors' checking account post-petition,

all of which accrued post-petition. The only remaining factual issue before the Court is whether

Debtors attempted to close their checking account pre-petition, and were somehow wrongfully

---

[15]The Court is certainly not suggesting that Debtors have such a viable cause of action, but is similarly not foreclosing the possibility that some violation of federal or state law, or breach of contract, may have taken place if Debtors' allegations are shown to be true. However, it should also be noted that any potential cause of action arising from conduct that occurred prior to the filing of the petition in this case, and damages arising therefrom, if any, would appear to be property of the estate. *See In re Hokanson*, 383 B.R. 548, 557 (Bankr. D. Kan. 2008) (holding that "[i]t is well settled that upon the filing of a bankruptcy, any causes of action belonging to the Debtor at the time of filing become property of the estate pursuant to § 541(a)(1))."

9

denied that request. However, the resolution of that dispute would have no impact on the Court's ruling, as even if Debtors had made that attempt pre-petition, US Bank still did not violate the automatic stay. Therefore, the evidentiary hearing set for the July 14-15 stack docket is canceled.

**IT IS, THEREFORE, BY THE COURT ORDERED** that US Bank has provided a satisfactory response to the Court's Order to Show Cause. The Court finds that US Bank has not violated the automatic stay, as alleged in Debtors' Motion for Order to Show Cause, and the show cause matter is terminated.

###